**FILED**

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : |
| v. | : Case No. 23-CR-112 (ACR) |
| | : |
| **JASON PARSONS,** | : |
| | : **FILED UNDER SEAL** |
| **Defendant.** | : |

**STATEMENT OF OFFENSE IN SUPPORT OF GUILTY PLEA**

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, **JASON PARSONS**, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

**I.   Summary of the Plea Agreement**

Defendant Jason Parsons agrees to admit guilt and enter a plea of guilty to Count One of the Information charging him with Unlawful Possession of a Firearm on Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(1).

**II.   Elements of the Offense**

The essential elements of the offense of Unlawful Possession of a Firearm on Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(1), each of which the Government must prove beyond a reasonable doubt, are:

1. The defendant carried or had readily accessible to any individual on the Grounds or in any of the Capitol Buildings a firearm; and

2. The defendant possessed the firearm knowingly, and not by mistake or accident.

1

### III. <u>Penalties for the Offense</u>

A violation for Unlawful Possession of a Firearm on Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(1), carries a maximum sentence of five years of imprisonment; a fine of up to $250,000; and a term of supervised release of not more than three years; a special assessment of $100; and an obligation to pay any applicable interest or penalties on fines and restitution not timely made. The United States Sentencing Guideline § 5E1.2 permits the Court to impose an additional fine to pay the costs of imprisonment and any term of supervised release and/or probation.

### IV. <u>Statement of the Facts</u>

The following statement of facts does not purport to include all of the defendant's illegal conduct. It is intended to represent sufficient information for the Court to find a factual basis for accepting the defendant's guilty plea.

Had this case gone to trial, the Government's evidence would prove the following:

*** The Attack at the U.S. Capitol on January 6, 2021 ***

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting

to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $1.4 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Jason Parsons's Participation in the January 6, 2021, Capitol Riot*

Jason Parsons is a resident of Texas. On or about January 2, 2021, Parsons, Roger Preacher, and Mario Mares arranged to travel together in Mares's vehicle from Texas to Northern Virginia in order to attend the Stop the Steal rally in Washington, D.C. on January 6. While making arrangements over text message, Parsons, Mares, and Preacher discussed firearms laws in the District of Columbia and that they knew it would be unlawful to bring firearms into the city.

On January 4, 2021, Mares picked up Parsons and Preacher at their homes in Texas. All three of the men brought firearms with them on their trip, including pistols and AR-style rifles. Parsons brought two firearms: a Glock, model 19, 9 millimeter caliber semiautomatic pistol, serial number GYT680, and an AR-style rifle. Parsons, Mares and Preacher then drove from Texas and arrived at a hotel in Fairfax, Virginia, on January 5. Parsons and Mares stayed in one room, while Preacher stayed in his own room.

Parsons, Preacher, and Mares woke up early on January 6 and prepared to leave for the rally in D.C. Parsons placed his Glock semiautomatic handgun inside a holster on his hip, and observed Mares holster a firearm on his hip. Parsons was aware that Preacher was also carrying a firearm. Parsons loaded three rifles into a bag, loaded the bag onto a hotel pushcart, and placed the rifles in Mares's vehicle. Preacher, Parsons, and Mares then drove from Fairfax, Virginia, into Washington, D.C.

Mares parked the vehicle somewhere in what is believed to be Southwest D.C. and the three men walked from there to the national mall. They left the rifles in Mares's vehicle. Parsons continued to carry his Glock semiautomatic pistol on his right hip under a flag/jacket he was wearing.

Following the rally, Parsons, Preacher, and Mares walked toward the Capitol, where they made their way up toward the Lower West Terrace of the Capitol Grounds. Parsons and Preacher remained on the Lower West Terrace for more than an hour, during which time they became separated from Mares. While on the Lower West Terrace, Parsons took the photograph below, depicting him on Capitol Grounds at approximately 3:41 p.m.:



During the entire time he was on Capitol Grounds, including when this picture was taken, Parsons remained in possession of his Glock, model 19, 9 millimeter caliber semiautomatic pistol, serial number GYT680. On January 6, Parsons was also aware that it was unlawful to possess a firearm within the District of Columbia and on Capitol Grounds.

Parsons, Preacher, and Mares eventually reunited, walked back to Mares's vehicle, and traveled back to their hotel in Fairfax, Virginia. Parsons brought the bag containing the rifles back into Parsons and Mares's room. Based on reports they were hearing about police arrests, the three men decided to immediately leave Virginia and travel back to Texas. Before doing so, Parsons, Preacher, and Mares each unholstered their handguns and placed them on a bed in Parsons and Mares's room. They also placed the rifles on the bed, along with hats and tactical vests the men wore to D.C. that day. Parsons then took the following photograph on the evening of January 6, 2021, which he posted to Facebook with the caption, "Fuck Washington DC:"



On the left side of the photograph, the Glock, model 19, 9 millimeter caliber semiautomatic pistol, serial number GYT680, which Parsons took onto Capitol Grounds on January 6, 2021, can be seen

directly alongside an AR-style rifle with a red band.

The defendant acknowledges that the firearms described herein, to include the ones possessed by himself, Mares, and Preacher, were firearms within the definition of 18 U.S.C. § 921(a)(3). That is, at least one of the weapons possessed by each individual would or were designed to or could be readily converted to expel a projectile by action of an explosive.

*   *   *

This proffer of evidence is not intended to constitute a complete statement of all facts known by the parties, but is a minimum statement of facts intended to provide the necessary factual predicate for the guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the defendant's plea of guilty to the charged crime. This Statement of Offense fairly and accurately summarizes and describes some of the defendant's actions and involvement in the offense to which the defendant is pleading guilty.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: *[signature]*
Stephen J. Rancourt
Assistant United States Attorney

## DEFENDANT'S ACKNOWLEDGMENT

I, JASON PARSONS, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 4-3-23

JASON PARSONS
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: April 3, 2023

DAVID GUINN
Attorney for Defendant